IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMIR FATIR, | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 23-370-CFC-EGT |
| DR. TIMOTHY JOHNS, | ) | |
| Defendant. | ) | |

**ORDER AND REPORT AND RECOMMENDATION**

*Pro se* Plaintiff Amir Fatir ("Plaintiff"), a sentenced inmate at the James T. Vaughn Correctional Center ("JTVCC"), filed this action against JTVCC Chaplain Dr. Timothy Johns ("Defendant") for alleged religious discrimination under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*. (D.I. 1). Presently before the Court are the parties' cross motions for summary judgment and Plaintiff's motion to amend the Complaint. (D.I. 66, 82 & 95). For the reasons set forth below, the Court recommends that Plaintiff's motion for summary judgment be DENIED and Defendant's motion summary judgment be GRANTED. Additionally, Plaintiff's motion to amend is DENIED.

## I. BACKGROUND

In the 1990s, while housed in Arizona state prison, Plaintiff converted to the "Religion of Fitrah." (D.I. 87 at 1).[1] On January 12, 2015, after being transferred back to Delaware, Plaintiff filed a Change of Faith Form with JTVCC – a request that was denied because the JTVCC Iman

[1] Plaintiff was convicted in Delaware Superior Court and incarcerated in Delaware until 1996. *Fatir v. Thomas*, 106 F. Supp. 2d 572, 575 n.1 (D. Del. 2000). He was then transferred to Arizona under the Interstate Corrections Compact and remained there until 2004. *Fatir v. Comm'r Robert Coupe*, C.A. No. 16-315-GMS, 2016 WL 6275593, at *2 (D. Del. Oct. 25, 2016). Before being transferred to Arizona and converting to Fitrah, Plaintiff (formerly known as Sterling Hobbs) was a "member, and one-time Imam, of the Nation of Islam." *Hobbs v. Pennell*, 754 F. Supp. 1040, 1041 (D. Del. 1991).

indicated that Fitrah "is an Arabic word and not a religion." (D.I. 66, Exs. 1 & 2). Plaintiff's follow-up 2015 correspondences were similarly denied for lack of a "bonafide outside source to give validity to your request." (*See* D.I. 66, Exs. 3-5).

After Defendant took over as JTVCC Chaplain in September 2020 (D.I. 83, Ex. A ¶ 4), Plaintiff provided Defendant with a "brief synopsis" of Fitrah and requested "official authorization" to practice Fitrah on November 29, 2022. (*See* D.I. 66, Ex. 6; D.I. 83, Ex. A ¶ 5). On March 7, 2023, Defendant denied Plaintiff's request for a separate Fitrah service at the prison chapel, noting that "Fitrah according to Wikipedia has its roots in the Islamic faith" and the chapel "currently ha[s] three Ju'mah services every week" and that Plaintiff is free to "practic[e] [his] desired religion in [his] cell or outside in the open space." (D.I. 66, Ex. 7 at 1). On March 15, 2023, Plaintiff filed an administrative grievance with JTVCC, alleging that Defendant denied his First Amendment and RLUIPA rights to practice Fitrah and requesting that JTVCC allow Fitrah services, classes, diets, "oracle" cards, yoga mats and delineation of Fitrah as a separate religion. (D.I. 83, Ex. B at 1-2). JTVCC returned Plaintiff's grievance as unprocessed, further noting that Fitrah "is a form of the Islamic religion" and directing Plaintiff to request approval to purchase goods from the commissary. (*Id*. at 3). On March 20, 2023, Plaintiff wrote to the warden directly and filed another grievance, requesting a long list of goods and services[2] and alleging violation of his First Amendment and RLUIPA rights to "freely practice [his] sincerely held beliefs and practices of [his] Fitrah religion." (D.I. 66, Ex. 8 at 2-3; D.I. 1, Ex. F). JTVCC returned Plaintiff's second grievance as unprocessed, again noting that Fitrah "is a form of Islamic religion" and

[2] In his March 20, 2023 grievance, Plaintiff specifically requested "Metu Neter, Tarot and Igham oracle cards, essential oils, non-GMO diet, Fitrah religious medals and headwear, yoga mat, colored candles and lights, Ifa Oracle calabash divination chain or palm nuts, I Ching coins, Fitrah holiday observances, natural clothing, and access to Fitrah ministers (outside) and volunteers for fellowship." (D.I. 66, Ex. B at 2-3).

directing Plaintiff to contact the commissary or warden for approval to purchase the requested items. (D.I. 66, Ex. 8 at 4-5).

On March 31, 2023, Plaintiff filed this § 1983 action against Defendant, asserting twenty-six counts for various alleged violations of the Free Exercise Clause and the Establishment Clause of the First Amendment, as well as for violations of the Equal Protection Clause of the Fourteenth Amendment and RLUIPA. (D.I. 1). Plaintiff did not name any other defendants in his Complaint and only sought injunctive relief. (D.I. 1 at 1 & 10-12; *see also* D.I. 87 at 3). After the Complaint was filed, Plaintiff continued to file administrative grievances, requesting additional goods and services that he claims are required to practice Fitrah – *e.g.*, hiring a Fitrah clerk in the chapel, allowing Plaintiff to purchase and display Fitrah figurines and a small altar, permitting Plaintiff to send Fitrah DVDs at the state's expense, permitting conjugal visits with his wife, and providing Plaintiff with "Fitrah Sacred Music."[3] (*See generally* D.I. 87, Ex. 1 at 12-85).

Important to this opinion, as this litigation progressed, JTVCC permitted Plaintiff to engage in several of the alleged tenets of Fitrah at issue in this action, including changing his religious designation to Fitrah (D.I. 83, Ex. A ¶ 9), permitting Plaintiff to use the chapel to hold Fitrah classes and services (D.I. 43 ¶ 3), offering Plaintiff alternative Kosher/Halal meals (D.I. 83, Ex. C ¶ 7), allowing Plaintiff to use the chapel to celebrate Fitrah holidays (D.I. 83, Ex. A ¶ 11), permitting Plaintiff a Fitrah religious adviser (D.I. 83, Ex. C ¶ 10), permitting Plaintiff to purchase a yoga mat, colored lights, an electric candle and Metu Neter cards (*id.* ¶ 8; D.I. 106 at 5), permitting religious volunteers to bring two ounces of essential oil for use during inmate services

[3] According to Plaintiff, "Fitrah Sacred Music" includes various songs by Marvin Gaye, Stevie Wonder, the Beatles, Sam Cooke, Al Green, Sly & the Family Stone, the Temptations, Tupac Shakur and James Brown. (*See* D.I. 87, Ex. 9).

at the chapel (D.I. 83, Ex. A ¶ 14; D.I. 83, Ex. C ¶ 9) and providing Plaintiff with Fitrah music to use during his time in the Chapel (D.I. 83, Ex. A ¶ 12).

Plaintiff filed his motion for summary judgment on October 7, 2025. (D.I. 66, 67 & 68). Defendant filed his cross motion for summary judgment on January 9, 2026. (D.I. 82 & 83). Both motions have been fully briefed. (D.I. 87, 88, 105 & 106).

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show[] that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 n.10 (1986). An assertion that a fact is not genuinely disputed must be supported by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the non-movant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S.

at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. Summary Judgment

Defendant argues that summary judgment is warranted because (1) he was not personally involved in the alleged violation of Plaintiff's constitutional rights and (2) even if Defendant was personally involved, Plaintiff's claims are either now moot considering JTVCC's subsequent accommodations or there are no genuine disputes of material fact. (D.I. 83; D.I. 88; D.I. 105). Holding him to a less stringent standard, the Court understands Plaintiff to be arguing that summary judgment should be entered in his favor because (1) Defendant was personally involved in the alleged violation of his constitutional and RLUIPA rights, (2) none of Plaintiff's claims are moot because JTVCC is free to reverse its post-Complaint accommodations and (3) Defendant has failed to meet his burden of showing that the disputed policies were "reasonably related to

legitimate penological interests" or the "least restrictive means" for furthering a "compelling government interest." (D.I. 67; D.I. 87; D.I. 106).[4]

1. Authority to Grant Requested Relief

Except for Plaintiff's request to hold separate Fitrah services and classes (*i.e.*, Counts IV-VI), Defendant argues that Plaintiff has failed to establish that any of the complained-of denials were made by Defendant. (D.I. 83 at 5-7 ("Simply stated, the only request Plaintiff directed to Dr. Johns was ultimately granted, and Plaintiff has no evidence that Dr. Johns himself took any action to deprive Plaintiff of his constitutional rights.")). Without citing any evidence in the record, Plaintiff contends that Defendant is the correct defendant because, as the JTVCC Chaplain, Defendant is "in charge of all religious activities at JTVCC" and "was the point man for the administration and Department of Correction in dealing with Plaintiff's Fitrah requests." (D.I. 87 at 5 & 14-16 (citing *Hardwick v. Senato*, C.A. No. 15-326-RGA, 2019 WL 2231689, at *8 (D. Del. May 23, 2019))). The Court ultimately agrees with Defendant.

As explained previously (D.I. 108), plaintiffs seeking prospective injunctive relief must make a showing that the defendant has the authority to "appropriately respond" to the requested injunctive relief. *Parkell v. Danberg*, 833 F.3d 313, 332 (3d Cir. 2016) (cleaned up); *Torres-Jurado v. Admin. of Bergen Cnty. Jail*, 767 F. App'x 227, 232 (3d Cir. 2019) ("For Torres-Jurado to show that ordering such relief would be effectual, he has to explain how the Sheriff could

---

[4] Because summary judgment should be granted in Defendant's favor on lack of authority and mootness grounds, the Court does not reach the merits of Plaintiff's constitutional and RLUIPA claims. If the merits were reached, however, the Court would likely find that Plaintiff has failed to establish that many of his ever-changing and facially unreasonable demands under the guise of Fitrah are "grounded in a sincerely held religious belief" and that the JTVCC's "action substantially burdens his religious exercise." *Holt v. Hobbs*, 574 U.S. 352, 361 (2015); *see also DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) ("The mere assertion of a religious belief does not automatically trigger First Amendment protections, however. To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection.").

actually do what would be ordered or be affected by what is declared." (citing *Parkell*, 833 F.3d at 332)); *see also Thomas v. Jones*, C.A. No. 19-220J, 2023 WL 2654215, at *4 (W.D. Pa. Mar. 17, 2023) (dismissing claims for injunctive relief against defendants who lacked authority to grant the relief sought).

Here, Plaintiff alleges that Defendant has unconstitutionally deprived him of a laundry list of goods and services that Plaintiff contends are necessary to practicing Fitrah, including various foods, jewelry, goods, medicines and therapies, burial rights and clothes (Counts I-III and VII-XXVI). (*See* D.I. 1 at 5-10). With respect to food, for instance, Plaintiff contends that Defendant has unconstitutionally deprived him of organic, GMO-free "food that is free of chemical additives and gender-bending materials such as soy products." (D.I. 1 at 12). With respect to goods, Plaintiff contends that Defendant has unconstitutionally deprived him of, for example, "I Ching coins to divine the will of heaven and communicate with the Supreme Being" and "Ifa Oracle divination palm nuts or other Ifa Oracle divination devices." (*Id*. at 7). With respect to medicines, Plaintiff contends that Defendant has unconstitutionally deprived him of "chiropractic, naturopathy, ayurvedic medicine, music therapy, color therapy, acupuncture, homeopathy, ultrasound tumor eradication, chi kung, Reiki and herbal medicine." (*Id*. at 8). And with respect to clothing, for example, Plaintiff alleges that Defendant has violated his constitutional rights "[b]y forcing Plaintiff to wear female undershorts and pants, i.e., drawers and pants that lack a slit or zipper for him to use when he must urinate." (*Id*. at 10 (similarly contending that synthetic fibers are "divinely prohibited by the religion of Fitrah")).

But other than Plaintiff's request for separate Fitrah services and classes (Counts IV-VI), Plaintiff does not offer any evidence that Defendant has the authority to grant Plaintiff's requests. Defendant's lack of authority to grant the requested relief is evidenced by JTVCC's direction of

Plaintiff to the Commissary and Warden regarding Plaintiff's administrative grievances. (*See, e.g.*, D.I. 66, Ex. 8 at 4-5; D.I. 83, Ex. B at 4). Because Plaintiff has failed to provide a "mere scintilla" of evidence that Defendant has the authority to grant the requested relief, summary judgment is appropriate with respect to Counts I-III and VII-XXVI. *See Parkell v. Senato*, C.A. No. 14-446-LPS, 2019 WL 1435883, at *6-7 (D. Del. Mar. 31, 2019) (granting summary judgment in favor of defendant with respect to prisoner's request for kosher diet where no evidence defendant chaplain had authority to grant requested relief); *Hardwick*, 2019 WL 2231689, at *8-9 (granting summary judgment in favor of defendant chaplain where no evidence of authority to grant prisoner's request for religious tent); *Parson v. Pierce*, C.A. No. 15-325 (MN), 2019 WL 1004298, at *9 (D. Del. Feb. 28, 2019) (granting summary judgment in favor of defendant warden and defendant food service director where no evidence of authority to change prison diet policy).

Lastly, the Court notes that Plaintiff's reliance on *Hardwick* (D.I. 87 at 11-12) is misplaced because there Judge Andrews found a genuine dispute of material fact as to the defendant chaplain's authority to grant the prisoner's request to congregate with Jewish inmates – an area arguably more within the realm of a prison chaplain's authority. *See Hardwick*, 2019 WL 2231689, at *6-8. Here, other than Plaintiff's now moot request to hold separate Fitrah services (discussed below in Section III.A.2), no genuine dispute of material fact exists as to Defendant's lack of authority to grant the requested relief. And as noted in Defendant's reply brief (D.I. 88 at 5), in *Hardwick*, Judge Andrews ultimately found after a bench trial that the defendant prison chaplain did not have authority to grant the inmate's requested relief with respect to the prison's congregation policies. *See Hardwick v. Senato*, C.A. No. 15-326-RGA, 2020 WL 1506218, at *4 (D. Del. Mar. 30, 2020) ("Defendant Christo, the chaplain, is not responsible for the prison's failure to obtain a rabbi or for the policy on inmate-led services.").

In sum, the Court finds that summary judgment in favor of Defendant is appropriate with respect to Counts I-III and VII-XXVI because Plaintiff has failed to establish that Defendant has the authority to grant Plaintiff's requested relief.

2. Live Case or Controversy

Supported by the sworn declarations of Defendant and non-party JTVCC Warden Brian Emig (D.I. 83, Exs. A & C), Defendant contends that many of the religious practices that Plaintiff alleges are necessary to practice "Fitrah" have since been permitted by the JTVCC. (D.I. 83 at 8; D.I. 88 at 7-8). In response, Plaintiff contends that he has not been "permitted to do almost everything" that constitutes the practice of Fitrah, highlighting several items and practices that JTVCC allegedly continues to prohibit (*e.g.*, possessing "essential oils" in his cell, wearing Fitrah jewelry and clothing). (D.I. 87 at 12-13). Plaintiff further contends that injunctive relief is necessary for all claims because "[a]bsent a court order, the very things Defendant has permitted subsequent to the filing of this case can easily be disallowed at institutional whim." (D.I. 67 at 2). The Court agrees that Counts IV-VI – *i.e.*, the remaining counts – are moot.

Because Plaintiff is permitted to conduct and attend Fitrah services and classes, Counts IV-VI claims are now moot because they no longer present a live case or controversy. *See Nye v. Klemm*, No. 1:23-CV-00008-RAL, 2026 WL 2185269, at *5 (W.D. Pa. July 29, 2026) (dismissing as moot inmate's request for injunctive relief with respect to religious diet after defendant implemented policy permitting inmate requested diet); *Parson*, 2019 WL 1004298, at *7-8 (dismissing prisoner's constitutional and RLUIPA claims as moot on summary judgment with respect to razor access after prison permitted plaintiff razor access). Here, Defendant submitted a sworn declaration that "Plaintiff is able to regularly use the Chapel for his practice of Fitrah." (D.I. 83, Ex. A ¶ 10). Plaintiff further acknowledged that "on June 17, 2024," he "was authorized to facilitate Fitrah classes and services at the JTVCC." (D.I. 43 ¶ 3).

To the extent Plaintiff raises the "capable of repetition" exception to mootness (D.I. 67 at 2), that exception is "narrow" and "available 'only in exceptional situations.'" *Rendell v. Rumsfeld*, 484 F.3d 236, 241 (3d Cir. 2007) (citation omitted). Here, Plaintiff fails to establish that the "(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* (citation omitted); *see also Parkell v. Senato*, 704 F. App'x 122, 125 n.5 (3d Cir. 2017) (holding that "capable of repetition" exception does not apply to inmate's RLUIPA with respect to kosher food after prison system implemented policy permitting inmate kosher food); *Parson*, 2019 WL 1004298, at *8 (holding that "capable of repetition" exception does not apply to inmate's constitutional and RLUIPA claims with respect to razor access because inmate "did not establish a reasonable expectation that he, specifically, will be again subjected to the policy that does not allow inmates in SHU to possess razors"). Nor does the voluntary cessation exception apply because Defendant has met his burden of showing that withdrawal of the JTVCC policy allowing Plaintiff to conduct and attend Fitrah services and classes is not reasonably expected to occur. *See Nye*, 2026 WL 2185269, at *5 ("[S]peculation or conjecture that a defendant might defy the policy or restriction and terminate the diet is not enough to overcome mootness."); *Parson*, 2019 WL 1004298, at *8 (finding concern that prisoner may be moved back to previous housing too "speculative" to overcome mootness).

For the above reasons, the Court finds that summary judgment in Defendant's favor as to Counts IV-VI is warranted because Plaintiff's claims with respect to Fitrah services and classes are moot.

3. <u>Unpled Grievances & Claims</u>

In Plaintiff's summary judgment briefing, he alleges that Defendant has unconstitutionally deprived him of several goods and services purportedly necessary to the practice of Fitrah that

were never mentioned in the Complaint, including Fitrah figurines, the ability to mail DVDs and "over 50 Fitrah Sacred Music songs." (D.I. 87 at 8-10). Plaintiff further alleges for the first time at summary judgment that Defendant has violated "DOC Religious Policy" and several unpled provisions of the RLUIPA, including the equal terms, non-discrimination and exclusion provisions. (D.I. 67 at 5-7 (quoting 42 U.S.C. § 2000cc(b)(1)-(3)); D.I. 87 at 16-17 (quoting DDOC Policy No. 3.16); D.I. 106 at 3-5). Even if these unpled claims were cognizable,[5] summary judgment would nevertheless be appropriate because a plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Jones v. Treece*, 774 F. App'x 65, 67 (3d Cir. 2019) (citation omitted); *see also Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008). Accordingly, the Court recommends that summary judgment be granted in Defendant's favor with respect to Plaintiff's unpled claims.

**B. Motion to Amend**

Plaintiff also now seeks to amend his Complaint. (D.I. 95). Plaintiff argues that Judge Connolly "permitted Plaintiff to file a proposed amended complaint adding Deputy Warden John Brennan as a defendant." (*Id.* at 1). Not so. Judge Connolly merely indicated that Plaintiff was not precluded from seeking leave to amend in the future. (*See* D.I. 65 at 2 (denying without prejudice to renew, "upon filing a motion to amend the complaint," Plaintiff's motion to join Deputy Warden John Brennan)). But Plaintiff still had to seek leave to amend. Moreover, Judge Connolly issued

---

5 The equal terms, non-discrimination and exclusion provisions of the RLUIPA cited by Plaintiff apply to land use regulations – not prisons. *Compare* 42 U.S.C. § 2000cc (governing land use regulations), *with id*. § 2000cc-1 (governing institutionalized persons). And Plaintiff filed administrative grievances with respect to Fitrah figurines, the ability to mail DVDs and "Fitrah Sacred Music" ***after*** the Complaint was filed. (*See* D.I. 87, Ex. 1 at 16 (filed Sept. 22, 2024), 24 (same) & 36 (same); *see also* D.I. 22 ¶ 5 (Defendant raising failure to exhaust affirmative defense)). As such, Plaintiff failed to exhaust his administrative remedies with respect to those claims. *See* 42 U.S.C. § 1997e(a); *Wallace v. Miller*, 544 F. App'x 40, 42 (3d Cir. 2013) ("A prisoner may not satisfy the exhaustion requirement after the filing of his complaint.").

his order on September 24, 2025. (*See id.*). Yet Plaintiff waited almost six months after that order to seek leave. (*See* D.I. 95). During that six-month period, motions for summary judgment were filed and fully briefed and Plaintiff filed three separate motions for preliminary injunctions, each of which was also fully briefed. (*See* D.I. 66, 74, 77, 82 & 89). Although leave to amend should be freely granted in civil rights cases, doing so is not required when granting leave to amend would be inequitable. *See Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017).

Granting the proposed amendment at this late stage would be inequitable. Delay alone is insufficient to deny a request to amend, *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001), but Plaintiff's delay here has caused the proposed amendment to be prejudicial to Defendant and place an undue burden on the court. This case was filed in March 2023. (D.I. 1). Discovery has long been closed. (*See* D.I. 35). Yet six months after the close of discovery and almost exactly three years after filing this case, Plaintiff moved to add sixteen defendants and thirty-eight new claims based on a newly alleged civil rights conspiracy. (*See* D.I. 95-1 at 1, 27-64). The scope of this case would expand incredibly if amendment were permitted. Defendant Johns would be required to engage in additional discovery for Plaintiff's new proposed claims that are otherwise wholly absent from the operating pleading, such as Plaintiff's proposed claim based on "systematic racism" under 42 U.S.C. § 1985(3). (*See id.* ¶ 254). And the most problematic aspect of Plaintiff's delay is that he has apparently known that he wanted to amend for months but did not do so. He first sought to join at least one of the putative defendants as early as July 2025 concerning the newly alleged conduct. (*See* D.I. 51). Even after Judge Connolly denied Plaintiff's initial request to amend, Plaintiff could have sought to amend again prior to dispositive motions being filed. But Plaintiff did not, compounding the prejudice to Defendant. In these circumstances, leave to amend is routinely denied because of the undue prejudice placed on the

non-movant.[6] *See, e.g.*, *Cummings v. City of Philadelphia*, C.A. No. 03-34, 2004 WL 906259, at *4 (E.D. Pa. Apr. 26, 2004) (denying leave to amend because the proposed amendment would assert new claims that require new discovery, the amendment was sought after summary judgment had been filed and the basis for the amendment had been known for months). Plaintiff's motion to amend will be denied.

## IV. **CONCLUSION**

For the foregoing reasons, the Court recommends that Plaintiff's motion for summary judgment (D.I. 66) be DENIED and Defendant's motion for summary judgment (D.I. 82) be GRANTED. Additionally, Plaintiff's motion to amend the Complaint (D.I. 95) is DENIED.

The parties may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy of the Report and Recommendation. *See* FED. R. CIV. P. 72(a) & (b)(2); *see also* FED. R. CIV. P. 6(d). Any responses to the objections shall be filed fourteen (14) days after the objections. Objections and responses are limited to ten (10) pages. The failure of a party to object may result in the loss of the right to review in the district court and the loss of certain appellate rights or the right to appellate review. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017); *United Steelworkers of America, AFL-CIO v. New Jersey Zinc Co.*, 828 F.2d 1001, 1006-08 (3d Cir. 1987); *Bello v. United Pan Am. Fin. Corp.*, 2025 WL 275109, at *3 n.5 (3d Cir. Jan. 23, 2025).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(A) & (B), Federal Rule of Civil Procedure 72(a) & (b) and District of Delaware Local Rule 72.1. Parties are

---

[6] Plaintiff has been previously warned that waiting to amend until after summary judgment is filed is generally "unacceptable" because it prejudices both the Court and defendants. *Fatir v. Dowdy*, C.A. No. 95-677-GMS, 2002 WL 2018824, at *8 (D. Del. Sept. 4, 2002).

directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: August 17, 2026

UNITED STATES MAGISTRATE JUDGE